**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **ROBERT W. GRINE,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Civil Action No. 09-11 Erie** |
| | ) | |
| **COLBURN'S AIR CONDITIONING** | ) | |
| **AND REFRIGERATION, INC., et al.** | ) | |
| | ) | |
| **Defendants.** | ) | |

### Opinion

Plaintiff Robert W. Grine commenced this action asserting various constitutional

violations arising out of events that occurred following an adverse judgment against Mr. Grine in

the Magisterial District Court of Forest County, Pennsylvania in March 2007.   Mr. Grine was

sued by Colburn's Air Conditioning and Refrigeration, Inc. ("Colburn") for non-payment of a

repair bill.  He lost, and judgment in the amount of $2,617.53 was entered against him.  Mr.

Grine, through his attorney Janice Haagensen, filed an appeal to the Court of Common Pleas of

Forest County, Pennsylvania.   The judgment was affirmed by Judge William F. Morgan; he

appealed to the Superior Court of Pennsylvania, lost and later sought allocatur in the

Pennsylvania Supreme Court; this was denied.  We will discuss his legal maneuvering in greater

detail herein.

Not to be dissuaded, Mr. Grine, has filed a complaint in this Court alleging that his First

and Fourth Amendment rights were violated, his substantive and procedural due process rights

were violated, and that he was denied equal protection of the law. The Complaint names the

following individuals and entities as defendants:

     1. Colburn;

     2. Stephen E. Sellstrom, Colburn's attorney;

     3. Tammy L. McKee-Schwab, Prothonotary of the Court of Common Pleas of Forest County;

     4. William F. Morgan, Judge of the Court of Common Pleas of Forest County;

     5. Karen Reid Bramblett, Prothonotary of the Superior Court of Pennsylvania;

     6. Robert L. Wolfgang, Sheriff of Forest County, Pennsylvania;

     7. John Doe 1 and John Doe 2, Deputy Sheriffs of Forest County; and

     8. Northwest Savings Bank, Inc. ("Northwest").

Before the Court are the motions to dismiss filed by all Defendants except attorney

Sellstrom, who filed an answer to the Complaint. For the reasons discussed below, we conclude

that the complaint fails to set forth any claims for which we may grant relief, and thus we will

grant the motions to dismiss filed by each of the defendants, as well as sua sponte dismiss the

claims asserted against Stephen E. Sellstrom.

This has all the earmarks of an attorney-driven case, as we shall discuss herein.

## I. Background

The relevant facts are as follows. Colburn sued Mr. Grine for non-payment of fees for

repair work performed by Colburn on Mr. Grine's furnace. (Compl., ¶ 15.) A hearing on the

matter was held on March 8, 2007, before District Judge Michael L. Fedora in the Forest County

Magisterial District Court . (Compl., ¶ 16.) On March 9, 2007, Judge Fedora issued a judgment

2

in favor of Colburn and against Mr. Grine in the amount of $2,617.53. (Compl., ¶ 17.) Mr.
Grine filed a Notice of Appeal from Judge Fedora's adverse ruling on April 11, 2007, in the
Court of Common Pleas of Forest County. (Compl., ¶ 18.) Rule No. 1002 of the Pennsylvania
Rules of Civil Procedure Governing Actions and Proceedings Before Magisterial District
Justices, states that an appeal must be filed within 30 days after entry of judgment, thus Mr.
Grine's appeal should have been filed by April 8, 2007. Pa.R.C.P.M.D.J. No. 1002.) The
Prothonotary of Forest County, Defendant McKee-Schwab, rejected the notice of appeal as
untimely. (Compl., ¶ 21.)

On April 24, 2007, Mr. Grine filed a motion in the Court of Common Pleas of Forest
County to Reinstate his Notice of Appeal. (Compl., ¶ 23.) On May 11, 2007, Judge Morgan
denied Mr. Grine's motion. (Compl., ¶ 25.) On June 4, 2007, Mr. Grine filed a Notice of Appeal
from Judge Morgan's Order of May 11, 2007, in the Superior Court of Pennsylvania. (Compl.,
¶ 26.) By Order dated June 5, 2007, Mr. Grine was "directed [] to file a concise statement of
matters complained of on appeal in accordance with Rule 1925(b) within 14 days." (Ex. D, at 3.)
"The docket reflects that on June 6, 2007, the order was mailed to [Mr. Grine's] attorney of
record in compliance with Pa.R.C.P. 236." (Id.) "The docket does not reflect that a 1925(b)
statement was ever filed of record." (Id.)

According to Mr. Grine, on June 14, 2007, he "served" a 1925(b) Concise Statement of
Matters Complained of on Appeal on Judge Morgan and the Prothonotary of Forest County via
United States mail "to the offices of the Prothonotary at the Forest County Courthouse, 526 Elm
Street #2, Tionesta, PA 16353." (Compl., ¶ 28.) Mr. Grine further claims that his 1925(b)
statement was received by the Prothonotary, but that she refused to docket it. (Compl., ¶ 37.)

3

Judge Morgan indicated that on June 25, 2007, he received Mr. Grine's 1925(b) statement in his

chambers. (Ex. D, at 3, citing Trial Court Opinion, July 6, 2007, at 1; and Certified Record at

11.) However, because the docket entries did not indicate that the 1925(b) statement was filed of

record in the Office of the Clerk of Courts of Forest County, Judge Morgan deemed that Mr.

Grine had waived the issues raised in the 1925(b) statement. (Ex. D, at 3, citing Trial Court

Opinion, at 1-2.)

As a result, on July 16, 2007, the Superior Court of Pennsylvania ordered Mr. Grine to

show cause as to why the appeal should not be quashed for failure to timely file his 1925(b)

statement. (Compl., ¶ 35; Ex. D, at 3.)

On July 18, 2007, the Prothonotary of Forest County certified and transmitted the record

of Mr. Grine's case to the Superior Court. (Compl., ¶ 33.) According to Mr. Grine, his counsel

"perceived that the *certified* record was grossly inaccurate, incomplete, and untruthful in the

form in which it was submitted to the Superior Court by the Forest County Prothonotary."[1]

(Compl., ¶ 34.) In Mr. Grine's response to the Superior Court's June 16, 2007 Order to show

cause, he stated that the certified record had been "recklessly, [and] grossly falsified" and that

the Prothonotary had "*deliberately falsified and transmitted*" the record "in an inaccurate,

reckless, and completely incomprehensible fashion." (Compl., ¶¶ 38, 39.)

On August 22, 2007, the Superior Court issued the following Order:

> Appellant Grine's August 15, 2007 "petition for extension
> of filing deadline for appellant's brief pursuant to Pa.R.A.P. 2185
> (a)" is GRANTED as follows: (1) the due date for appellant's
> brief is EXTENDED such that appellant's brief is now due on
> September 26, 2007; (2) the prothonotary of this court is

---

[1] Apparently for emphasis, certain words in the Complaint are in bold, black type, and some are italicized or underlined. We have quoted them just as they appear in the Complaint.

4

>    DIRECTED to transmit to appellant's attorney, Janice Shelburne
>    Haagensen, Esquire, a copy of the original record which was
>    received by this court on July 18, 2007; (3) to the extent that
>    appellant is of the belief that the original record as presently
>    constituted is incomplete and/or incorrect, appellant may seek
>    completion and/or correction of the record in the trial court
>    pursuant to Pa.R.A.P. 1926, and, to the extent that the trial court
>    grants appellant the requested relief, the trial court shall transmit a
>    supplemental record to this court which completes and/or corrects
>    the record presently in this court.

(Order, August 22, 2007, attached as Ex. B to Morgan and Bramblett's Memorandum of Law;

Compl., ¶¶ 41-42.)

In response to the Superior Court's August 22, 2007 Order, Mr. Grine claims that on

September 8, 2007, he "served a Request to the Forest County Court of Common Pleas to

complete and correct the record pursuant to PA.R.App.Proc. 1926, and made a Request to Trial

Court to Transmit Supplemental Corrected Record to the Superior Court . . ." (Compl., ¶ 43.)

Mr. Grine "laid out in great detail the serious, unlawful and gross *deficiencies contained in the

certified record* as it was transmitted to the Superior Court by the Forest County Prothonotary on

July 18, 2007"; that the certified record "had in almost every aspect been recklessly and

maliciously falsified, that crucial pleadings were misidentified, back-dated, and omitted

altogether from the docket." (Compl., ¶ 44-45.)

The trial court did not amend the certified record. (Compl., ¶ 46.) In his brief to the

Superior Court Mr. Grine argued that the Court should remand the matter to the trial court so that

the certified record could be corrected and supplemented. (Compl., ¶ 51.) However, on June 25,

2008, the Superior Court affirmed Judge Morgan's Order denying Mr. Grine's Motion to

Reinstate his Notice of Appeal. (Ex. D; Compl., ¶ 52.) The Superior Court found that Mr.

Grine's exhibits showed that he directed his 1925(b) mailing to "Judge Morgan" and that he

"fail[ed] to demonstrate that the mailing was directed to the Prothonotary's office for the purposes of filing the 1925(b) statement of record." (Ex. D, at 4.)

Following the Superior Court's Order, the Sheriff's Office of Forest County served a writ of execution on Mr. Grine at his home on July 2, 2008. (Compl., ¶ 57.) Mr. Grine claims that the writ of execution was "faked" and "unsupported by a court order." (Compl., ¶ 57.) The Sheriff's Office also served a writ of execution with interrogatories on Northwest Savings Bank, which Mr. Grine alleges was also "faked" and that it "purport[ed] to authorize the release of private banking information." (Compl., ¶ 58.) Northwest Savings Bank complied with the writ and released information about Mr. Grine's bank account. (Compl., ¶ 10.)

On July 24, 2008, Mr. Grine filed a Petition for Allocatur with the Pennsylvania State Supreme Court. (Compl., ¶ 60.) On July 26, 2008, Mr. Grine filed a motion in the trial court to stay the execution of judgment. (Compl., ¶ 62.) After Judge Morgan denied the motion, Mr. Grine filed a motion before the Supreme Court of Pennsylvania for a Stay Ancillary to Appeal. (Compl., ¶ 65.) On November 6, 2008, Mr. Grine filed an Amended Stay Ancillary to Appeal. (Compl., ¶ 68.) On November 26, 2008, the Pennsylvania Supreme Court denied Mr. Grine's motion for stay of execution and his Petition for Allocator. (Compl., ¶ 71.)

Mr. Grine's Complaint alleges in Count One, that Prothonotary McKee-Schwab, Prothonotary Bramblett, and Judge Morgan violated his First Amendment due process right of access to the courts because he was denied the right to appeal as a result of the false and untruthful certified record. In Count Two, he alleges that Prothonotary McKee-Schwab, Prothonotary Bramblett, and Judge Morgan violated his substantive and procedural due process rights by failing to enforce their own rules mandating submission of a truthfully certified record

6

to the Superior Court.  In Count Five, Mr. Grine alleges that Prothonotary McKee-Schwab, Prothonotary Bramblett, and Judge Morgan violated his procedural due process right to appeal.

In Count Three, Mr. Grine alleges a violation of his Fourth Amendment rights when he was served with a writ on his property by the John Doe Officers acting in concert with the Forest County Sheriff, Colburn, and Defendant Sellstrom.    In Count Four, he alleges a Fourth Amendment violation based on Northwest Savings Bank's release of his private banking information to third parties, acting in concert with the Forest County Sheriff, the John Doe officers, Colburn, and Defendant Sellstrom.

Finally, in Count Six, Mr. Grine asserts that all Defendants individually and in concert acted to deprive him of his right to equal protection of the law.

## II.  Standard of Review

In ruling on a Rule 12(b)(6) motion for failure to state a claim upon which relief can be granted a Court must "'accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief.'" Phillips v. County of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008) , quoting Pinker v. Roche Holdings Ltd., 292 F.3d 361, 374 n. 7 (3d Cir. 2002), and citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 563, n.8 (2007). A valid complaint requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).  "To survive a motion to dismiss a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, --- U.S. ----, ----, 129 S.Ct. 1937, 1949 (2009).

The Supreme Court in Iqbal explained that although a court must accept as true all of the factual allegations contained in a complaint, that requirement does not apply to legal conclusions; therefore, pleadings must include factual allegations to support the legal claims asserted. Id. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements do not suffice." Id., citing Twombly, 550 U.S. at 555. See also Phillips, 515 F.3d at 232 ("We caution that without some factual allegation in the complaint, a claimant cannot satisfy the requirement that he or she provide not only 'fair notice,' but also the 'grounds' on which the claim rests.") (citing Twombly, 550 U.S. at 556 n. 3 (2007)). Accordingly, to survive a motion to dismiss, a plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 129 S.Ct. at 1949.

Under Rule 12(b)(6), "it is the usual practice for a court to consider only the allegations contained in the complaint, exhibits attached to the complaint and matters of public record." City of Pittsburgh v. West Penn Power Co., 147 F.3d 256, 259 (3d Cir. 1998), citing 5A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1357 (2d ed. 1990); see also Rogan v. Giant Eagle, Inc., 113 F. Supp.2d 777, 782 (W.D. Pa. 2000). "'Documents that the defendant attaches to the motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to the claim; as such, they may be considered by the court.'" Pryor v. NCAA, 288 F.3d 548, 560 (3d Cir. 2002), quoting 62 Fed.Proc., L.Ed. § 62:508. Here, Defendants have included undisputed Pennsylvania State Court documents that directly relate to the basis of Plaintiff's claims.

8

### III.  Discussion

For the reasons set forth below we find that Mr. Grine's claims asserted in Counts One,

Two, Three, Four, and Five are barred by the *Rooker-Feldman* doctrine.  In addition, Judge

Morgan and the Prothonotaries are entitled to immunity from suit from all claims asserted

against them.  As for Mr. Grine's equal protection claim, we find that it lacks any factual

allegations to support his conclusory legal claim.  Iqbal, 129 S.Ct. at 1949.  We further find that

even if we were to have jurisdiction over Mr. Grine's claims he has failed to state a claim upon

which relief can be granted.

#### A.  The *Rooker-Feldman* Doctrine

As discussed below, we find that the *Rooker-Feldman* doctrine bars Mr. Grine's due

process claims asserted in Counts One, Two, and Five, as well as his Fourth Amendment claims

asserted in Counts Three and Four.

Under the *Rooker-Feldman* doctrine, federal courts other than the Supreme Court may

not review "cases brought by state-court losers complaining of injuries caused by state-court

judgments . . . inviting district court review and rejection of those judgments."  Exxon Mobil

Corp. v. Saudi Basic Industries Corp., 544 U.S. 280, 281 (2005), citing District Court of Appeals

v. Feldman, 460 U.S. 462 (1983); Rooker v. Fidelity Trust Co., 263 U.S. 413 (1923). Effectively,

the doctrine "prevents 'inferior' federal courts from sitting as appellate courts for state court

judgments."  In Re Knapper, 407 F.3d 573, 580 (3d Cir. 2005).

Following the United States Supreme Court's decision in Exxon Mobil, which narrowed

the application of the *Rooker-Feldman* doctrine, the United States Court of Appeals for the Third

Circuit has defined two circumstances under which the doctrine applies and divests a federal court of jurisdiction:

> first, if the federal claim was actually litigated in state court prior to the filing of the federal action or, second, if the federal claim is inextricably intertwined with the state adjudication, meaning that federal relief can only be predicated upon a conviction that the state court was wrong.

In Re Knapper, 407 F.3d at 580.

Mr. Grine first claims that we need not address the *Rooker-Feldman* doctrine at all, since the doctrine does not apply where defendants were not parties in the previous state action. (Plaintiff's Response to Morgan and Bramblett's Motion to Dismiss, at 1.) He claims that the Exxon Mobil case now requires that parties asserting the doctrine had to have been parties in the state court proceedings. However, Mr. Grine misstates the law. Plaintiffs like Mr. Grine are not permitted to "end-run" the *Rooker-Feldman* doctrine by adding defendants not a party in the state action. ITT Corp. v. Intelnet Internat. Corp., 366 F.3d 205, 216–217 n. 19 (3d Cir. 2004) (*Rooker-Feldman* may be applied where "related but non-identical defendants . . . were drawn into the federal litigation by the parties . . . against whom the state court action was decided."). This is true even after *Exxon Mobil*, as the Supreme Court did not address whether defendants asserting *Rooker-Feldman* had to have been parties in the state court proceedings. See Tal v. Hogan, 453 F.3d 1244, 1257 (10th Cir., 2006), cert. denied 549 U.S. 1209 (2007) (ruling that *Rooker-Feldman* applied, since the "addition of new defendants in federal court . . . does not change the nature of the underlying state court ruling which upheld the [issue]").

The state court action was a simple contract case with Colburn suing Mr. Grine for failure to pay a bill. All of the additional defendants are connected to the state court action in one way or

10

another. Mr. Grine's addition of these new defendants does not change the nature of the underlying state action. Thus, we may examine whether the *Rooker-Feldman* doctrine bars Mr. Grine's due process and Fourth Amendment claims. We find that Mr. Grine's claims are barred by *Rooker-Feldman* because the claims are "inextricably intertwined" with the state court action.

There are two ways in which a federal claim may be found to be inextricably intertwined with a state adjudication. In Re Knapper, 407 F.3d at 581. First, a claim is inextricably intertwined if federal relief requires a determination that the state court judgment was erroneously entered. Id., citing Walker v. Horn, 385 F.3d 321 (3d Cir. 2004). See also Taliaferro v. Darby Tp. Zoning Bd., 458 F.3d 181 (3d Cir. 2006) (An inextricably intertwined federal claim exists when "federal relief can only be predicated upon a conviction that the state court was wrong."). A claim is also inextricably intertwined if granting plaintiff's relief would "negate the state court's judgment," or in some way "prevent a state court from enforcing its orders." In Re Knapper, 407 F.3d at 580.

In Knapper, the plaintiff claimed a due process violation alleging that the state lacked personal jurisdiction in her case because service of process on her was defective. Id. at 577-78. In order to prevail on her claim, the federal court would have had to conclude that the state court default judgments were improperly obtained, a conclusion that would require an order effectively negating the state court judgments. Id. The Knapper court thus found that the claim was "inextricably intertwined" with the state adjudication and therefore barred by the *Rooker-Feldman* doctrine. Id.

Like the plaintiff in Knapper, Mr. Grine claims that improper action by the state courts violated his rights. Specifically, he argues that the improper creation and maintenance of the

11

certified state trial court record violated his First Amendment and due process right of access to the courts and his right to appeal. However, this issue is intertwined with the state court adjudications. In an Order dated August 22, 2007, the Superior Court of Pennsylvania granted Mr. Grine's petition for extension of filing deadline for his appellant brief, and directed Mr. Grine as to how he could "seek completion and/or correction of the record in the trial court." (Order, August 22, 2007, attached as Ex. B to Morgan and Bramblett's Memorandum of Law.)

The Superior Court Order did not direct the trial court to change the record, nor did it say the record was incorrect; it merely said that if the trial court *decided* to change the record, it must submit a supplemental record to the Superior Court. (Id.) The trial court did not amend the record, and Mr. Grine complained of this fact in the appellant brief that he submitted to the Superior Court. (Brief of Appellant in the Superior Court of Pennsylvania, No. 1093 WDA 2007, attached as Ex. A to Morgan and Bramblett's Memorandum of Law.) In addition, the Pennsylvania Superior Court heard oral argument on this issue. (Compl., ¶ 51.) The Superior Court found it unnecessary to question the trial court's determination that no corrections or supplements to the record were required. (Ex. A; Compl., ¶ 52.) Instead, the Superior Court affirmed the trial court order denying Mr. Grine's motion to reinstate his notice of appeal because Mr. Grine had failed to properly comply with Rule 1925(b) of the Pennsylvania Rules of Appellate Procedure. (Ex. D; Compl., ¶ 52.) Not one to give up, after the Superior Court affirmed Judge Morgan's Order, Mr. Grine appealed to the Pennsylvania Supreme Court, where his Petition for Allocatur was once again denied. (Compl., ¶¶ 60, 71.)

If we were to find that the state trial court's certified record was improperly maintained, the state court's ultimate conclusion that there was no error in the record would be directly

12

negated. The Superior Court and Supreme Court's determinations that it was not necessary to question the trial court would be negated as well. Since, as in Knapper, the requested relief could only be predicated on the conviction that the state courts were wrong in their determinations, Mr. Grine's claims regarding the trial court record are inextricably intertwined with the state court adjudication, and this court is barred from exercising jurisdiction under *Rooker-Feldman.*

Next, Mr. Grine argues that the improper enforcement of state court judgments through service of writs of execution violated his Fourth Amendment rights. (Compl., Counts 3, 4.) Mr. Grine raised this issue in the trial court and again before the Pennsylvania Supreme Court. (Compl., ¶¶ 62, 67; Grine's Certification of Service of Motion for Stay, attached to Doc. 16.) In both courts he complained that the service of execution of the writs was improper, and that therefore the proceedings should be stayed. (Id.) Judge Morgan denied Mr. Grine's motion for stay of execution. (Compl., ¶ 65.) Mr. Grine then moved the Pennsylvania Supreme Court for Stay Ancillary to Appeal, which was also denied. (Compl., ¶¶ 67, 71.) In order to grant Mr. Grine's requested relief, we would have to conclude that the writs of execution were improperly brought against Mr. Grine in violation of the Fourth Amendment. This issue is inextricably intertwined with the state court adjudications because, as was the case in Knapper, the finding of a Fourth Amendment violation would negate the state court judgment that the writs of execution were proper. Furthermore, holding that enforcement of the trial court judgment against Mr. Grine was unconstitutional would require a finding that the state courts erred by refusing to grant a stay of the execution proceedings. Thus, *Rooker-Feldman* bars this court from exercising jurisdiction to review this claim.

13

Finally, as to Mr. Grine's argument that he was deprived of his right to equal protection, we lack sufficient information to determine whether this claim is barred by *Rooker-Feldman*. As discussed in detail below, Mr. Grine fails to allege how he believes that his equal protection rights were violated. Without knowing the basic tenets of plaintiff's claim it is not possible to determine whether the claim is inextricably intertwined with the state court judgment.

Because we lack jurisdiction over Mr. Grine's claims set forth in Counts One through Five, we will dismiss these claims.

### B. Eleventh Amendment Immunity

Defendants Judge Morgan, Prothonotary Bramblett, and Prothonotary McKee-Schwab are immune from suit under the Eleventh Amendment. The Eleventh Amendment affords immunity to all states and state entities, including the Commonwealth of Pennsylvania. See Lombard v. Pennsylvania, Dept. of Public Welfare, 540 F. 3d 190, 194-95 (3d Cir. 2008) (holding that Pennsylvania enjoys sovereign immunity). See also 42 Pa.C.S.A. § 8521(b)("Nothing contained in this subchapter shall be construed to waive the immunity of the Commonwealth from suit in Federal courts guaranteed by the Eleventh Amendment."). Since lawsuits against judicial officers in their official capacity are considered suits against the state, judicial officers are entitled to Eleventh Amendment immunity in these suits. See 42 Pa. C.S.A. § 301(4); Callahan v. City of Philadelphia, 207 F.3d 668, 672; Kentucky v. Graham, 473 U.S. 159, 166 (1985).

Mr. Grine argues that the "Eleventh Amendment is no bar to suits seeking prospective declaratory and injunctive relief against state officers who allegedly have interfered with federal rights." (Plaintiff's Response to Morgan and Bramblett's Motion to Dismiss, at 6, citing Cory v.

14

White, 457 U.S. 85 (1982) & Ex parte Young, 209 U.S. 123 (1908).) Mr. Grine is only partially correct as judicial immunity now extends to injunctive relief under the Federal Courts Improvement Act of 1996. Corliss v. O'Brien, 2005 WL 2334792, No. 05-4799, slip op. at 3 (M.S. Pa. 2005), aff'd, 200 Fed.Appx. 80 (3d Cir. 2006). Nonetheless, Mr. Grine requests no actual injunctive relief, but does seek monetary damages and a "judgment declaring" that his constitutional rights were violated. (Compl., at 15.) However, as Defendants correctly note, a declaration that constitutional rights were violated is not declaratory relief in the true legal sense. (Morgan and Bramblett's Reply Brief, at 2 fn. 1, citing Corliss v. O'Brien, 200 Fed. Appx. at 84-85.) See also Uniform Declaratory Judgment Act 1922, § 2 (the purpose of a declaratory judgment is to declare parties' "rights, status or other legal relations . . . [as] affected by a statute, municipal ordinance, contract or franchise"). The plaintiff in Corliss asked the court to declare that a judge violated his constitutional rights, but the court held that "declaratory judgment is inappropriate solely to adjudicate past conduct . . . [or to] proclaim that one party is liable to another." Corliss v. O'Brien, 200 Fed. Appx. at 84-85. Since Mr. Grine does not request true declaratory relief, the only relief which he may be granted (monetary damages) is barred by the Eleventh Amendment. See Puerto Rico Aqueduct and Sewer Authority v. Metcalf & Eddy, Inc., 506 U.S. 139 (1993) (holding that claims for retrospective and monetary relief are not exempt under Ex parte Young from the application of Eleventh Amendment immunity).

## 1. Judge Morgan

Judges, in their official capacity, are immune to suit under the Eleventh Amendment. Figueroa v. Blackburn, 208 F.3d 435 (3d Cir. 2000) (holding that all judges of both general and limited jurisdiction are immune from suit).

15

Judges act in their official capacity, and are therefore immune from suit if they perform a function normally performed by a judge and if the judge deals with that function in his or her judicial capacity. Gallas v. Supreme Court of Pa., 211 F.3d 760, 770 (3d Cir. 2000). The only time that judges acting in their official capacity are not immune to suit is if they act in the *clear absence* of *all* jurisdiction. Stump v. Sparkman, 435 U.S. 349, 356-57 (1978). We find it difficult to believe that Ms. Haagensen, Mr. Grine's attorney, was not aware of this familiar legal principle.

Mr. Grine accuses Judge Morgan of improperly supervising the creation and transmission of the trial court record. (Compl., at 13-15, Counts 1-2.) However, by overseeing the creation and transmission of the certified trial court record, Judge Morgan performed a function normally performed by judges and did so in his judicial capacity. Since Judge Morgan acted in his official capacity he is immune from suit unless he acted in "clear absence of all jurisdiction." Stump v. Sparkman, 435 U.S. 349, 356-57 (1978).

Mr. Grine alleges no facts which, if true, prove that Judge Morgan acted with the "clear absence of all jurisdiction." At best, Mr. Grine alleges that Judge Morgan's conduct amounts to procedural error or was in excess of jurisdiction. Even if true, Judge Morgan is still entitled to judicial immunity. Stump, 435 U.S. at 359-60; Gallas v. Supreme Court of Pa., 211 F.3d at 769.

Finally, even if Judge Morgan acted unfairly or maliciously in performing his judicial acts, as Mr. Grine also claims, he is still entitled to judicial immunity. Stump, 435 U.S. at 359-60; Gallas, 211 F.3d at 772. Thus, viewing the facts in a light most favorable to the plaintiff, no facts alleged would prove that Judge Morgan acted outside of his official capacity or in the "clear

16

absence of all jurisdiction," and he is therefore entitled to Eleventh Amendment immunity from suit on all claims asserted against him.

## 2. Prothonotary Bramblett and Prothonotary McKee-Schwab

Eleventh Amendment immunity may apply to judicial officers other than judges if the official's action in question involves the exercise of discretionary judgment, Antoine v. Byers & Anderson, Inc., 508 U.S. 429,435-36 (1993), performance of a function under the direction of a judge, Waits v. McGowan, 516 F. 2d 203, 205-06 (3d Cir. 1975), performance of a ministerial duty pursuant to a statute, see Smith v. Rosenbaum, 460 F.2d 1019, 1020 (3d Cir.1972), or performance of a function otherwise closely allied with the judicial process. Waits v. McGowan, 516 F. 2d 203, 206 (3d Cir. 1975). The doctrine of quasi-judicial immunity may also apply to prothonotaries. See Lockhart v. Hoenstine, 411 F.2d 455 (3d Cir. 1969) (recognizing that a prothonotary acting under a court's directive was entitled to judicial immunity); Boyce v. Dembe, 47 Fed. Appx. 155, 159 (3d. Cir. 2002) (holding that prothonotaries are entitled to absolute immunity).

In examining the applicability of quasi-judicial immunity to prothonotaries in the Third Circuit, the district court in Hurst v. City of Dover recently determined that a prothonotary accused of fabricating a false court document was immune to suit. No. 04-083-GMS-LPS, slip op. at 12-13 (D.Del. Feb. 13, 2009). The court stated that the prothonotary's actions regarding the court documents were within the range of functions that are integral to the judicial process and therefore protected by judicial immunity. Id.

Like the prothonotary in Hurst, both prothonotaries in the present case are accused of improper decision-making regarding fabricating or causing a false record to be transmitted or

maintained, improperly enforcing a Superior Court order, improperly enforcing rules of procedure, and of failing to report Judge Morgan's behavior to a court administrator. These are all functions that are integral to the judicial process and protected by judicial immunity. See Lockhart v. Hoenstine, 411 F.2d at 455; Hurst v. City of Dover, No. 04-083-GMS-LPS, slip op. at 12-13. Accordingly, the prothonotaries are entitled to Eleventh Amendment immunity from suit on all claims asserted against them.

### C. Failure to State a Claim upon which Relief may be Granted

Mr. Grine alleges several constitutional violations under 42 U.S.C. § 1983. In order to state a civil rights claim under § 1983, a plaintiff must allege that a federally protected right was violated and that the person depriving him of the right was someone acting under color of state law. Gomez v. Toledo, 446 U.S. 635, 640 (1980); Lake v. Arnold, 112 F.3d 682, 689 (3d Cir. 1997). We find that even if we had jurisdiction to hear Mr. Grine's Complaint we would dismiss his claims under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief may be granted.

### 1. Due Process Claims

Mr. Grine claims that Defendants have violated his due process right of access to the courts. In order to state a claim of denial of access to the courts, a plaintiff must allege facts that would show that (1) state officials "wrongfully and intentionally conceal[ed] information crucial to a person's ability to obtain redress through the courts," (2) that they did so "for the purpose of frustrating that right," and (3) that concealment and the delay "substantially reduce[d] the likelihood of one's obtaining the relief to which one is otherwise entitled." Gibson v. Super. of New Jersey Dep't of Law and Public Safety, 411 F.3d 427, 445 (3d Cir. 2005)(citation omitted).

First, Mr. Grine does not allege facts that would prove that state officials acted wrongfully and intentionally. See Twombly, 550 U.S. at 555 (holding that "mere conclusory statements do not suffice" to support a claim). Second, Mr. Grine does not allege facts that would prove that state officials acted for the purpose of "frustrating" his due process rights. In fact, the Pennsylvania Superior Court's Order offered Mr. Grine the opportunity to request a change to the record, which can only be viewed as permitting Mr. Grine access to the courts. Furthermore, Mr. Grine had the opportunity to raise the issues regarding the court record at both the state appellate and trial court levels. Third, even if Mr. Grine had alleged facts proving the first two elements, he has not alleged facts proving that the state "substantially reduced the likelihood" of his ability to obtain relief to which he was "otherwise entitled."

In order to prove that a state action "substantially reduced the likelihood" of obtaining relief "to which one is otherwise entitled," a plaintiff must first clearly identify both a non-frivolous underlying cause of action and its lost remedy. Christopher v. Harbury, 536 U.S. 403, 414-16 (2002). Plaintiffs are required to describe the predicate claim well enough that the court has information "to apply the 'nonfrivolous' test and to show that the 'arguable' nature of the underlying claim is more than hope." Id. at 416. In Christopher, the plaintiff alleged that defendants acting under color of law had through "false and deceptive information and concealment foreclosed Plaintiff from effectively seeking adequate legal redress" regarding her Guatemalan husband's detention, torture, and execution. Id. at 418. She claimed that because information was concealed from her, she was prevented from making an informed case to try to save her husband's life. Id. at 403. The Supreme Court stated that while the Justices appreciated her anguish, her broad and nonspecific allegations were "nearly unintelligible" and "did not

19

come even close to stating a constitutional claim for denial of access upon which relief could be granted." Id. at 418.

Similarly, in the present case, Mr. Grine fails to specify an underlying claim or cause of action for which he suffered an injury or lost remedy. Like the plaintiff in Christopher, he merely states conclusory allegations of malicious and fraudulent behavior repeatedly. *See* (Compl., ¶¶ 34, 38, 39, 44, 45, 51, 54, and Count 1.) The Christopher plaintiff may have at least had reason to allege only vague information because her accusation was that there was a cover-up to prevent her from obtaining information, but Mr. Grine is in a better position to make a case because he claims to be aware of specific errors in the record and yet never says what those errors are or how they would have affected his appeal.

Mr. Grine complains that the certified record should have been changed and that he should have been granted an appeal based on an amended record, but fails to state why or how the record should have been changed or in what meaningful way it would have affected his appeal. Mr. Grine incorrectly states that the Superior Court issued its August 22 Order, "on grounds that the certified record had never been accurately or completely transmitted to the Superior Court, and that *Grine would be prejudiced* by being forced to file an appeal *without transmission by the court below of an accurate and truthful record*." (Compl., ¶ 41.) This is a misrepresentation of the Superior Court's Order, which actually stated:

> *To the extent that appellant is of the belief* that the original record as presently constituted is incomplete and/or incorrect, appellant may seek completion and/or correction of the record in the trial court pursuant to Pa.R.A.P. 1926, and, *to the extent that the trial court grants appellant the requested relief*, the trial court shall transmit a supplemental record to this court which completes and/or corrects the record presently in this court.

20

(Order, August 22, 2007, attached as Ex. B to Morgan and Bramblett's Memorandum of Law (emphasis added).)

The Superior Court never indicated that it agreed with Mr. Grine's claim of error in the certified record; the Court merely acknowledged Mr. Grine's allegation and gave him the opportunity to address it at the trial court level. In addition, the Order did not require the trial court to change the record, but said that "to the extent" that the trial court chose to change the record it must transmit a supplemental record to the Superior Court. (Id.)

Mr. Grine was further directed to follow Pennsylvania Rule of Appellate Procedure 1926, which states that:

> If any difference arises as to whether the record truly discloses what occurred in the lower court, *the difference shall be submitted to* and settled by that court after notice to the parties and opportunity for objection, and the record made to conform to the truth.

Pa.R.A.P. 1926 (emphasis added). Thus, pursuant to Rule 1926, Mr. Grine was required to submit to the court *the difference* between what the record said and what he believed actually occurred. Mr. Grine has never explained what the difference was, and has not attached nor shown evidence that he explained this difference to the trial court pursuant to Rule 1926. His only claim is that he "laid out in great detail the serious, unlawful and gross *deficiencies contained in the certified record*" in his request to the trial court. (Compl., ¶44.) However, Mr. Grine has not only failed to produce a copy of this request, but fails to actually allege specific information that was wrongfully or intentionally concealed, and fails to allege facts that would prove that he is actually entitled to any relief for a non-frivolous cause of action that he was

21

foreclosed from litigating in the courts. We also note that Mr. Grine failed to provide specific allegations in any of his subsequent responses, replies, or sur-replies.

Mr. Grine has not alleged facts that would prove a single element of a due process claim. He has not alleged facts that would prove that the state acted intentionally or wrongfully, that the state acted with the intent of depriving him of his rights, or that his likelihood of obtaining relief to which he was entitled was substantially reduced (since he does not allege facts that would prove a non-frivolous claim nor a lost remedy).

Like the Christopher plaintiff, Mr. Grine has submitted a complaint with allegations so vague as to be nearly unintelligible. Even viewing the alleged facts in a light most favorable to Mr. Grine, he has failed to allege any facts that would prove his claim of denial of access to the courts.

In addition to claiming that his right of access to the courts was denied, Mr. Grine claims that he was denied two other rights: the right to have Defendants "enforce their own rules mandating submission of a truthfully certified record to the Superior Court," and the right to appeal as of right in a state court. (Compl., Counts 2, 5.) Mr. Grine cites no cases and makes no argument that either alleged right is or should be a federally protected due process right. Furthermore, this court can find no cases establishing either alleged right as a federally protected due process right. In fact, the Supreme Court has specifically held that "if a full and fair trial on the merits is provided, the Due Process Clause of the Fourteenth Amendment does not require a State to provide appellate review." Lindsey v. Normet, 405 U.S. 56, 77 (1972); In re. Brown, 439 F.2d 47, 51 (3d Cir. 1971).

22

## 2. Equal Protection Claim

Mr. Grine claims that Defendants have violated his right to equal protection, but fails to state how the violation occurred. Examining the facts in a light most favorable to Mr. Grine, we find no evidence of an equal protection violation.

In order to prove a general violation of his right to equal protection, Mr. Grine must prove either (1) that a government statute or rule discriminated against him by classifying him in a manner not rationally related to a legitimate state interest, (2) that he is a member of a suspect class of persons and was classified based upon his membership in that class, or (3) that the government is unequally impinging on some fundamental right. See New Orleans v. Dukes, 427 U.S. 297, 303 (1976) ("Unless a classification trammels fundamental personal rights or is drawn upon inherently suspect distinctions such as race, religion, or alienage, our decisions presume the constitutionality of the statutory discriminations and require only that the classification challenged be rationally related to a legitimate state interest.").

Here, Mr. Grine fails to argue that any statute or rule discriminates against him or categorizes him based on his membership in a federally protected suspect class. Instead, since he made a similar due process claim, Mr. Grine may be arguing that he has been denied equal protection of his right to appeal. An appeal "cannot be granted to some litigants and capriciously or arbitrarily denied to others without violating the Equal Protection Clause." Lindsey v. Normet, 405 U.S. at 77; In re. Brown, 439 F.2d at 51. Once again, however, Mr. Grine has failed to allege facts that would prove that his appeal was capriciously or arbitrarily treated differently than other appeals. If anything, Mr. Grine's allegations seem to indicate that he was

23

given the same chance to appeal that was available to other litigants. Initially, Mr. Grine was afforded the opportunity to file a notice of appeal from the district justice's judgment, but failed to timely do so. Judge Morgan denied Mr. Grine's motion to reinstate his notice of appeal, but Mr. Grine gives no indication that Judge Morgan acted arbitrarily in doing so and that he would not have done so with any other litigant. Mr. Grine was then given an opportunity to appeal from the order denying his motion to reinstate the notice of appeal. (Ex. D.) Mr. Grine was permitted to state his case in the form of a written brief and at oral argument. (Grine's Superior Court Brief, Ex. A. to Morgan and Bramblett's Motion to Dismiss; Compl., ¶ 51.) The Superior Court affirmed Judge Morgan's denial of Mr. Grine's motion to reinstate his notice of appeal, and explained its reasoning. There is no indication that the Superior Court would have ruled any differently with a similarly situated litigant. Furthermore, Mr. Grine alleges no facts that would prove that the Superior Court acted capriciously or arbitrarily.

Plaintiff has not only failed to allege facts that would prove some type of claim of an equal protection violation, but has failed entirely to even identify a manner in which he believes he was discriminated against or unequally treated compared to other persons. Accordingly, we will dismiss Mr. Grine's claim of an equal protection violation for failure to state a claim upon which relief may be granted.

### 3. Fourth Amendment Claims

Finally, Mr. Grine claims that Defendants have violated his Fourth Amendment rights by trespassing onto his property to improperly serve a writ of execution and by seizing bank records via another improper writ of execution.

24

The Fourth Amendment is violated when the state conducts an unreasonable search or

seizure that infringes on an expectation of privacy that society is prepared to recognize as

reasonable. Katz v. United States, 389 U.S. 347, 351 (1967) (Harlan, J., concurring); Oliver v.

United States, 466 U.S. 170, 177 (1984). We find no Fourth Amendment violation here.

### a. Fourth Amendment and Trespass

Mr. Grine claims that his Fourth Amendment rights were violated when Defendants

Wolfgang, Colburn, and Sellstrom caused the John Doe officers to "deliberately, maliciously and

recklessly trespass . . . on his property" and delivered documents that "were faked" to him, *i.e.*

the writ of execution. (Compl., Count 3.)  First, the delivery of documents is neither a search nor

a seizure but a delivery.  Thus, the only factual allegation Mr. Grine makes is that Defendants

caused law enforcement officers to trespass on his property.  However, trespassing does not

violate the Fourth Amendment unless the government trespassed into an area in which

defendants had a reasonable expectation of privacy.  Katz v. United States, 389 U.S. 347, 351

(1967) ("The Fourth Amendment protects people, not places."); Kyllo v. United States, 533 U.S.

27, 32 (2001) ("We have . . . decoupled violation of a person's Fourth Amendment rights from

trespassory violation of his property."); Silverman v. United States, 365 U.S. 505, 511 (1961)

("[W]e need not pause to consider whether or not there was a technical trespass under the local

property law . . . Fourth Amendment rights are not inevitably measurable in terms of ancient

niceties of tort or real property law.").

Mr. Grine does not allege that Defendants caused the state to trespass into an area in

which he had a reasonable expectation of privacy.  Since he fails to allege any facts that would

prove that Defendants violated his Fourth Amendment rights, we will dismiss this claim for failure to state a claim upon which relief may be granted.

### b. Fourth Amendment and Bank Records

Next, Mr. Grine alleges that Defendants Northwest, Colburn, and Sellstrom conducted an unreasonable search or seizure of his bank records. (Compl., Count 4.) However, the Supreme Court ruled in United States v. Miller that bank customers do not have a protectable Fourth Amendment interest in bank account information because they do not have a reasonable expectation of privacy in information handed over to a third party. 425 U.S. 435, 443 (1976). Although Miller was limited by the Right to Financial Privacy Act ("RFPA"), the limitation appears to apply only to the federal government and we cannot find any case in which it was applied to a state or local government entity. See U.S. v. Zimmerman, 957 F.Supp. 94, 96 (N.D.W.Va. 1997). The Zimmerman court reasoned that the RFPA prohibits financial institutions from providing "government authority" with access to its customer's financial records, after defining "government authority" as any agency or department of the United States, or any officer or employee, or agent thereof ." Id., citing 12 U.S.C. § 3401(3); 12 U.S.C. § 3402. Zimmerman quoted legislative history indicating that the RFPA was meant to apply only to federal authority and not to state and local governments:

> Finally, it is important to note that the scope of this title is limited to officials of Federal agencies and departments and to employees of the United States. This limitation reflects our belief that legislation affecting state and local government is the proper province of the respective State governments and of the Conference of Commissioners on Uniform State laws. We believe that grave constitutional and political issues would have been raised if this title had applied to other levels of Government. Several States, most notably California, have enacted financial

26

> privacy statutes of their own. This is a movement which deserves
> both our support and our forbearance.

Id., citing H.R.Rep. No. 95-1383, at 247 (1978), reprinted in 1978 U.S.C.C.A.N. 9273, 9376
(minority views).

Thus, bank customers have neither Fourth Amendment nor statutory expectation of
privacy that their bank records will not be viewed by state or local government agencies or
officials. Furthermore, the court in Miller also ruled that the existence of a Fourth Amendment
interest was not dependent on whether the subpoena requiring bank record information was
defective. United States v. Miller, 425 U.S. at 441.

Since Mr. Grine has no reasonable expectation of privacy that his bank records will not
be seen by a third party, he has alleged no protectable Fourth Amendment interest nor violation.
Like the Fourth Amendment interest in Miller, Mr. Grine's Fourth Amendment interest is not
affected by whether or not the document demanding the information (in this case, a writ of
execution) was defective. Therefore, this claim will also be dismissed for failure to state a claim
upon which relief may be granted.

## IV. Conclusion

This court lacks jurisdiction under *Rooker-Feldman* over Mr. Grine's claims set forth in
Counts One through Five. Furthermore, this court lacks jurisdiction under the Eleventh
Amendment regarding Mr. Grine's claims asserted against Judge Morgan, Prothonotary
Bramblett, and Prothonotary McKee-Schwab. Finally, even if this court had jurisdiction to hear
all claims, Mr. Grine has failed to state any claim upon which relief may be granted.

Accordingly, this case must be dismissed under Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction and under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim.

As we have noted, Mr. Grine's allegations are vague. However, it is apparent that his primary complaint stems from his original failure to timely file a notice of appeal from the District Justice's March 9, 2007 judgment. As the Superior Court noted, Mr. Grine's notice of appeal was clearly filed late in violation of the applicable procedural rule. (Superior Court Memorandum, No. 1093 WDA 2007 filed June 25, 2008, at 5, n. 1, Ex. D.) The Superior Court concluded that if it were to address the issues on the merits it "would find the trial court did not err in denying [Mr. Grine's] motion to reinstate notice of appeal." (Ex. D at 5 n.1.) Similarly, it is clear to this court that Mr. Grine is attempting to make a federal case out of his own repeated failure to comply with procedural rules.

In dismissing this complaint we deny leave to amend the complaint. Leave to amend should be granted freely unless the amendment would result in "undue delay, bad faith . . . , repeated failure to cure deficiencies by amendments previously allowed, undue prejudice . . ., [and] futility . . ." Foman v. Davis, 37 U.S. 178, 182 (1962). This Court may deny leave to amend if amendments would be futile. In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1435 (3d Cir. 1997) ("'[f]utility' means that the complaint, as amended, would fail to state a claim upon which relief could be granted"). In this instance, Mr. Grine cannot amend the complaint to state a claim upon which relief could be granted. Accordingly, we will dismiss Plaintiff's complaint under Civil Rule of Procedure 12(b)(6) and deny leave to amend.

28

In closing we note that counsel for Mr. Grine in this case, Jamie S. Haagensen also represented Mr. Grine in the case of Grine v. Coombs et al., 214 F.R.D. 312 (W.D. Pa. 2003). As a result of her conduct in that case, the United States Court of Appeals for the Third Circuit found that Attorney Haagensen "repeatedly used improper litigation techniques and filed improper appeals, ultimately extending the case unnecessarily over an eight-year period . . ." and ordered that she, herself, had to pay nearly $45,000 in damages to the defendants and their counsel. See Grine et al. v. Coombs et al., 112 Fed. Appx. 830, 832, 2004 WL 2361485 (3rd Cir. 2004).

In this action Ms. Haagensen is suing a common pleas judge, two prothonotaries, a sheriff, two deputy sheriffs, a bank, her opposing attorney (Mr. Sellstrom) and Colburn, the prevailing plaintiff in the State case, after having filed unsuccessful appeals in the Common Pleas court, the Superior Court of Pennsylvania and the Pennsylvania Supreme Court. The Preamble and Scope of the Pennsylvania Rule of Professional Conduct are quite clear and not difficult to understand. We remind Ms. Haagensen of a few of these:

> [1] A lawyer, as a member of the legal profession, is a representative of clients, an officer of the legal system and a public citizen having a special responsibility for the quality of justice.
>
> [2] As a representative of clients, lawyer performs various functions. As advisor, a lawyer provides a client with an informed understanding of the client's legal rights and obligations and explains their practical implications. . . .
>
> . . .
>
> [4] In all professional functions a lawyer should be competent, prompt and diligent. . . .
>
> [5] . . . A lawyer should use the law's procedures only for legitimate purposes and not to harass or intimidate others. A

29

lawyer should demonstrate respect for the legal system and for those who serve it, including judges, other lawyers and public officials.

Rules of Prof. Conduct, Preamble and Scope, 42 Pa.C.S.A.

Attorney Haagensen has attempted to make a constitutional mountain out of a garden variety $2600 bill collection mole hill. In the words of that well-known country philosopher and balladeer, Kenny Rogers: "You've got to know when to hold 'em, know when to fold 'em." It's about time for Ms. Haagensen and her client to fold 'em.

An appropriate Order will be entered.


_August 25, 2009_
Date

_Maurice B. Cohill, Jr._
Maurice B. Cohill, Jr.,
Senior District Judge